| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>YIN TING, an individual; RUFINO VASQUEZ, an individual; and JM SUPERMARKETS, INC., a California corporation | **DEFENDANTS**<br>MARIA OCHOA BARAJAS, an individual, All Persons Or Entities Unknown Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint, or any Cloud On Title Thereto. |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Matthew D. Resnik<br>RHM LAW LLP<br>17609 Ventura Blvd., Ste 314<br>Encino, CA 91316<br>(818) 285-0100 Fax: (818) 855-7013 | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor  ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)

| **NATURE OF SUIT** |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

**FRBP 7001(1) - Recovery of Money/Property**
[ ] 11-Recovery of money/property - §542 turnover of property
[ ] 12-Recovery of money/property - §547 preference
[ ] 13-Recovery of money/property - §548 fraudulent transfer
[ X ] 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[X] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ] 51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
[ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) - Dischargeability (continued)**
[ ] 61-Dischargeability - §523(a)(5), domestic support
[ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
[ ] 63-Dischargeability - §523(a)(8), student loan
[ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
[ ] 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ] 71-Injunctive relief - imposition of stay
[ ] 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ] 01-Determination of removed claim or cause

**Other**
[ ] SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
[ X ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought: Actual damages, compensatory, consequential, statutory and punitive damages, injunctive relief, interests, and reasonable attorneys' fees and costs.

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br><br>Maria Ochoa Barajas | BANKRUPTCY CASE NO.<br><br>5:24-bk-50477-HLB | |
| DISTRICT IN WHICH CASE IS PENDING<br><br>Northern District of California | DIVISION OFFICE<br><br>San Jose | NAME OF JUDGE<br><br>Hon. Hannah L. Blumenstiel |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br><br>/s/ Matthew D. Resnik<br><br>Matthew D. Resnik | | |
| DATE<br><br>November 13, 2024 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Matthew D. Resnik | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1  M. Jonathan Hayes (Bar No. 90388)
2  Matthew D. Resnik (Bar No. 182562)
   **RHM LAW LLP**
3  17609 Ventura Blvd., Suite 314
   Encino, CA 91316
4  Telephone: (818) 285-0100
   Facsimile: (818) 855-7013
5  jhayes@RHMFirm.com
   matt@RHMFirm.com

6  *Attorneys for Plaintiffs*
7  YIN TING, RUFINO VASQUEZ,
   and JM SUPERMARKETS, INC.

8

9              **UNITED STATES BANKRUPTCY COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN JOSE DIVISION**

12  In re:                              )  Case No. 5:24-bk-50477-HLB
                                        )
13                                      )  Chapter 11
        MARIA OCHOA BARAJAS,            )
14                                      )  Adv. No.
                                        )
15                        Debtor.       )
                                        )  **COMPLAINT** FOR:
16  ─────────────────────────────────  )  1. QUIET TITLE;
17  YIN TING, an individual; RUFINO     )  2. CANCELLATION OF
    VASQUEZ, an individual; JM          )     INSTRUMENTS;
18  SUPERMARKETS, INC., a California    )  3. AVOIDANCE AND RECOVERY OF
    corporation.                        )     A FRAUDULENT TRANSFER;
19                                      )  4. DECLARATORY RELIEF;
                  Plaintiffs            )  5. PRELIMINARY AND PERMANENT
20                                      )     INJUNCTION;
            vs.                         )
21                                      )
    MARIA OCHOA BARAJAS, an             )
22  individual,  All Persons Or Entities )
    Unknown Claiming Any Legal Or       )
23  Equitable Right, Title, Estate, Lien, Or )
    Interest In The Property Described In The )
24  Complaint, or any Cloud On Title Thereto. )
                                        )
25              Defendant.              )
                                        )
26  ─────────────────────────────────  )

27

28

Case: 24-05047   Doc# 1   Filed: 11/13/24   Entered: 11/13/24 19:52:09   Page 3 of 59

Plaintiffs YIN TING, RUFINO VASQUEZ ("Individual Plaintiffs"), and JM SUPERMARKETS, INC. ("Corporate Plaintiff") allege as follows:

## I. INTRODUCTION; PARTIES; JURISDICTION

1. The United States Bankruptcy Court for the Northern District of California has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) as the issues arise in or are related to a case under title 11.

2. Plaintiffs Yin Ting and Rufino Vasquez ("Individual Plaintiffs") are creditors of this estate. Individual Plaintiffs own 100% of JM Supermarkets, Inc.

3. Plaintiff JM Supermarkets, Inc. ("Corporate Plaintiff"), a creditor of this estate, is a corporation formed under the laws of California with a principal place of business in California. Corporate Plaintiff filed its own chapter 11 petition in the Central District of California on September 19, 2024, case No. 2:24-bk-17612-WB. Plaintiff Yin Ting executed the voluntary petition as CEO. The purpose for filing the petition was to stop a foreclosure sale on the Real Property (as defined below) scheduled for the next day. That chapter 11 case is pending.

4. Individual Plaintiffs and Corporate Plaintiff are hereinafter jointly referred to as Plaintiffs.

5. Defendant Maria Ochoa Barajas ("Defendant") is the Debtor in this bankruptcy case. Ms. Barajas filed her chapter 13 petition on April 3, 2024. The court granted her request to convert her case to chapter 11 on June 24, 2024. (Doc. 70).

6. The real property which is the subject of this action is a commercial property located at 220 San Felipe Rd., Hollister, CA 95023 (the "Real Property"); APN 053-370-014-000 in the County of San Benito, State of California, and legally described in the quitclaim deed, **Exhibit "B."** Corporate Plaintiff is the owner of the Real Property.

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H) and (O).

8. Venue is proper in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

COMPLAINT

Case: 24-05047   Doc# 1   Filed: 11/13/24   Entered: 11/13/24 19:52:09   Page 4 of 59

**LAW OFFICES**
M. Jonathan Hayes

## II.    STATEMENT OF FACTS

9.      Plaintiffs and Defendant have been engaged in litigation over the sale by Defendant of her interest in the Corporate Plaintiff to Individual Plaintiffs in the summer of 2023.

10.     In or about April, 2023, Individual Plaintiffs and Defendant entered into a written agreement for Individual Plaintiffs to purchase and Defendant to sell the outstanding stock of Corporate Plaintiff including its business, a retail market DBA *Los Cuates Supermercado Y Taqueria* and certain of its assets to Individual Plaintiffs.  The parties executed a Term Sheet for Purchase and Sale of JM Supermarkets, Inc. DBA *Los Cuates Supermercado Y Taqueria* ("Term Sheet") and a Promissory Note.  The parties initialed each page of the Term Sheet.  A copy of the Term Sheet is attached hereto as **Exhibit "A."**

11.     Plaintiffs and Defendant were jointly represented by Rhonda Edgar, Esq., in connection with the purchase and sale of the Corporate Plaintiff and certain of its assets including the market.

12.     Paragraph 3 of the Term Sheet stated the "Sale [of Corporate Plaintiff] shall become effective and complete upon the execution of the Term Sheet and the Promissory Note (Attached and incorporated by reference)."  Thus, on execution, the sale was "effective and complete."  Paragraph 5 of the Term Sheet stated Defendant would continue operating the market until July 10, 2023, after which Individual Plaintiffs would take over the operations.

13.     Individual Plaintiffs paid Defendant $1.5 million pursuant to the Term Sheet. Defendant turned over control of the Corporate Plaintiff, the market and other assets to Individual Plaintiffs on or about July 10, 2023.

14.     Ignoring the Agreement and the initial and continuing performance and payments, Defendant commenced a criminal, false and fraudulent campaign to interfere with, ruin and attempt to reseize the assets she had sold to Individual Plaintiffs.

LAW OFFICES
M. Jonathan Hayes

15.     Individual Plaintiffs filed requests for restraining orders against Defendant and her agents in the San Benito Superior Court, which were granted and extended in force because Defendant invoked her 5th amendment right to avoid testifying at the hearing.

16.     Defendant has been criminally charged by the San Benito District Attorney for violating California Penal Code § 418 and is awaiting trial.

## III.     ARBITRATION

17.     On October 2, 2023, Individual Plaintiffs commenced an arbitration with JAMS, Case No. 521000433 (the "Arbitration"). Later, Defendant filed a counter-demand for arbitration. On October 20, 2023, the temporary Arbitrator, Hon. Barry Baskin, entered an order on Individual Plaintiffs' Request for Emergency Relief mandating Individual Plaintiffs "continued possession and use of the premises . . . without interference from [Defendant] and subject to the terms of that lease."

18.     On November 13, 2023, Defendant filed a First Amended Complaint in the Superior Court against Individual Plaintiffs and two other individuals. In response, Individual Plaintiffs filed with the Superior Court a Petition to Compel Arbitration, which was granted. Individual Plaintiffs then filed an Amended Demand for Arbitration which was granted.

19.     Barbara Reeves ("Arbitrator") was appointed as Arbitrator and issued interim orders on March 6, 2024, regarding the lease of the Real Property, including that rent shall be paid into an account subject to arbitrator control, which Individual Plaintiffs have done.

20.     The bankruptcy court in Defendant's bankruptcy case granted relief from stay permitting Individual Plaintiffs to proceed with the pending Arbitration. (Doc. 65). The Arbitration proceeded to trial as scheduled on August 26-27, 2024. Defendant attended trial and presented her case; at least 13 witnesses testified.

21.     On August 28, 2024, the day after the completion of the Arbitration trial, without any authority either from Plaintiffs or from the bankruptcy court, Defendant

Case: 24-05047     Doc# 1     Filed: 11/13/24     Entered: 11/13/24 19:52:09     Page 6 of 59

LAW OFFICES
M. Jonathan Hayes

executed a quitclaim deed purporting to transfer the Real Property from Corporate Plaintiff to herself – as a gift (the "Transfer"). The quitclaim deed was recorded in San Benito County on September 20, 2024. A copy of the quitclaim deed is attached hereto as **Exhibit "B."**

22. Plaintiffs were unaware of the Transfer until counsel discovered the transfer in late October 2024 as part of a periodic check of title based on previous unauthorized transfers.

23. On September 20, 2024, the Arbitrator issued her Interim Award. On October 2, 2024, the Arbitrator issued her Final Award ("Final Award"), a copy of which is attached as **Exhibit "C"** and incorporated by reference as if herein set forth in its entirety. The Final Award confirmed the sale of Corporate Plaintiff to Individual Plaintiffs, confirmed that the Individual Plaintiffs own 100% of Corporate Plaintiff, confirmed that it owns the Real Property, and awarded them some $18 million in damages.

24. In the Final Award, the Arbitrator declared the following:

(1) The Agreement consists of the Term Sheet, Promissory Note and Lease.

(2) The Agreement has been performed by [Plaintiffs], except as prevented and frustrated by [Defendant], and is effective, subject to the relief and remedies of the Award.

(3) The Business[1] (JM Supermarkets, Inc. DBA Los Cuates Supermercado Y Taqueria and its assets) is as defined in the Term Sheet, e.g., paragraphs 4, 6.

(4) The [Corporate Plaintiff] is owned by Yin Ting and Rufino Vasquez, 50% each. [Defendant] sold, does not own, and cannot act for or on behalf of, the [Corporate Plaintiff].

---

[1] The Final Award identified the "Business" as JM Supermarkets, Inc. dba DBA Los Cuates Supermercado Y Taqueria **and its assets**. For clarification, this complaint identifies the Corporate Plaintiff and its assets separately.

Case: 24-05047    Doc# 1    Filed: 11/13/24    Entered: 11/13/24 19:52:09    Page 7 of 59

**LAW OFFICES**
M. Jonathan Hayes

(5) [Defendant] breached the Agreement and her attendant duties.

(6) [Defendant] breached the covenant of quiet enjoyment and covenant of good faith and fair dealing and her attendant duties.

(7) [Defendant] breached her tort and statutory duties, including fraud, theft, conversion misappropriation, trespass, and forcible detainer.

(8) [Defendant] deprived [Plaintiffs] of the benefit of the bargain of the Agreement.

(9) [Defendant] failed to cooperate to enable [Plaintiffs] to assume the SBA loan, preventing and frustrating them from doing so. The SBA loan is from a third party and is secured by the [corporate assets], and [Plaintiffs] are forced to address it, causing them further damage. Accordingly, [Plaintiffs] are entitled to a $2,000,000.00 offset against any other remaining obligations under the Agreement.

(10) The liquor license for the Business is material to the operation and value of the Business. [Defendant] is liable for all resulting harm and damages due to [Defendant]'s failure to cooperate to transfer the liquor license for the Business.

(11) [Defendant] acted intentionally, willfully, oppressively, fraudulently, maliciously.

(12) [Defendant]'s San Benito Superior Court verified complaint was ordered to arbitration. The arbitration, and the Award, encompass, address and resolve all issues, claims and defenses in, relating to and arising from all court and arbitration pleadings, and as could have been raised therein, and as otherwise raised in the arbitration (collectively "Issues").

(13) [Defendant]'s misconduct constitutes, and she is guilty of, unclean hands as to all Issues. [Defendant] is barred from in any way at any time bringing, pursuing, prevailing on, recovering on and/or relief or remedy, of any manner, at law or equity, as to all Issues.

Case: 24-05047   Doc# 1   Filed: 11/13/24   Entered: 11/13/24 19:52:09   Page 8 of 59

LAW OFFICES
M. Jonathan Hayes

(14) Title to and ownership of the [Real Property] is, and shall remain in, the [Corporate Plaintiff], subject to liens of record as of the date of the Award.

(15) [Defendant] shall not directly or indirectly, by herself or in concert with any other person or entity, in any way at any time interfere with the ownership and operation of the Business and [the Real Property] and [Plaintiffs]' rights, or otherwise act contrary to the Award.

(16) All monetary amounts of the Award shall be an offset against any monetary obligations of [Plaintiffs] under the Agreement.

(17) [Defendant] has repeatedly failed to comply with, and has violated, orders of the Arbitrator.

25.     The Final Award not only makes it clear that Individual Plaintiffs own the Corporate Plaintiff but the ruling includes declaratory and injunctive relief designed to prevent the Defendant from doing exactly what she attempted to do, claim ownership of the Corporate Plaintiff and the Real Property.

## IV.    FIRST CLAIM FOR RELIEF
### Quiet Title
(Against All Defendants)

26.     Plaintiffs reallege and incorporate by this reference the allegations contained in paragraphs 1 through 25 of this complaint as though fully set forth herein.

27.     Plaintiffs seek to quiet title to the Real Property against the ownership claim of Defendant as of the day prior to the Transfer because Defendant has no right, title, estate, lien, or interest in the Real Property.

28.     Plaintiffs claim the right to title to the Real Property because it was owned by Corporate Plaintiff prior to the Transfer and Defendant had no authority to transfer the Real Property from the Corporate Plaintiff to herself.

29.     Plaintiffs name as Defendants in this action all persons unknown claiming (a) any legal or equitable right, title, estate, lien, or interest in the Real Property adverse to

LAW OFFICES
M. Jonathan Hayes

Plaintiffs' title, or (b) any cloud on Plaintiffs' title to the Real Property. The claims of each unknown Defendant are without any right, and these Defendants have no right, title, estate, lien, or interest in the Real Property.

30. Plaintiffs desire and are entitled to a judicial declaration quieting title in Corporate Plaintiff's favor as of the day before the Transfer.

## SECOND CLAIM FOR RELIEF
### Cancellation of Instrument
(Against All Defendants)

31. Plaintiffs reallege and incorporate by this reference the allegations contained in paragraphs 1 through 25 of this complaint as though fully set forth herein.

32. Defendants may claim an estate or interest in the Real Property described hereinabove adverse to that of Plaintiffs' by virtue of the quitclaim deed which Defendant unilaterally and without notice created and recorded herself. But Defendants' claims are without any right because Defendants have no estate, right, title, or interest in the Real Property in light of the aforementioned lack of authority, statutory violations, fraud, and misconduct.

33. Although the quitclaim deed once reviewed may appear valid on its face, based upon the aforementioned lack of authority, fraud, misconduct and material omissions of Defendant it is invalid and void and of no legal force or effect regarding Corporate Plaintiff's interest in the Real Property for the reasons set forth hereinabove.

34. The estate or interest in the Real Property claimed by Defendants, strips Corporate Plaintiff's rightful title, interest and equity in the Real Property, purports to restrict Plaintiffs' full use and enjoyment of the Real Property, and hinders Plaintiffs' right to unrestricted alienation of it. If the quitclaim deed and any others purporting to transfer ownership to Defendant are not canceled, there is an absolute certainty that Plaintiff will suffer serious and irreparable injury.

35. Plaintiffs are therefore entitled to an Order cancelling the fraudulent quitclaim deed, **Exhibit "B."**

LAW OFFICES
M. Jonathan Hayes

## THIRD CLAIM FOR RELIEF

**Avoidance and Recovery of Voidable Transfers Pursuant to 11 U.S.C. §§ 544(b), 548(a)(1)(A) and 550(a) and California Civil Code § 3439.04(a)(1) and 3439.07**

(Against All Defendants)

36.     Plaintiffs reallege and incorporate by this reference the allegations contained in paragraphs 1 through 25 of this complaint as though fully set forth herein.

37.     Plaintiffs are informed and believe and based thereon allege that the Transfer was made with the actual intent to hinder, delay, or defraud any creditor of the Corporate Plaintiff.

38.     Plaintiffs are informed and believe and based thereon allege that the following factors with respect to the Transfer show the actual intent of Defendant:

a. The Transfers were made to an insider(s).

b. Defendant failed to disclose the Transfer.

c. The Corporate Plaintiff received less than reasonably equivalent consideration, i.e., nothing, for the Transfer as the Transfer was made for no consideration.

d. The Corporate Plaintiff was insolvent or became insolvent shortly after the Transfer was made in that the sum of the Corporate Plaintiff's debts exceeded all of its assets without the Real Property.

39.     The Corporate Plaintiff alleges that there was a creditor in existence at the time of the Transfer that holds an allowable unsecured claim against the Corporate Plaintiff.

40.     The Transfer constitutes a voidable transfer under California Civil Code §3439.04(a)(1), and is therefore avoidable pursuant to 11 U.S.C. § 544(b).

LAW OFFICES
M. Jonathan Hayes

## FOURTH CLAIM FOR RELIEF

**(Avoidance and Recovery of Voidable Transfers Pursuant to 11 U.S.C. §§ 544(b), 548(a)(1)(B) and 550(a) and California Civil Code § 3439.04(a)(2) and 3439.07)**

(Against All Defendants)

41.     Plaintiffs reallege and incorporate by this reference each and every allegation contained in paragraphs 1 through 25, inclusive, of this complaint as if set forth fully herein.

42.     Plaintiffs allege that the Defendant made the Transfer to herself and may have made other transfers to other persons or entities without receiving a reasonably equivalent value in exchange for the Transfers as the Transfers were made for no consideration.

43.     Plaintiffs are informed and believe and based thereon allege that at the time the Defendant made the Transfer, Corporate Plaintiff was engaged or was about to engage in a business or a transaction for which the remaining assets of the Corporate Plaintiff were unreasonably small in relation to the business or transaction.

44.     The Transfer constitutes a voidable transfer under 11 U.S.C. §§ 544 and 550 and California Civil Code §§ 3439 et seq. and, therefore, is avoidable by the transferor, the Corporate Plaintiff.

## FIFTH CLAIM FOR RELIEF

**(Avoidance and Recovery of Voidable Transfers Pursuant to 11 U.S.C. §§ 544(b), 548(a)(1)(B) and 550(a) and California Civil Code § 3439.05 and 3439.07)**

(Against All Defendants)

45.     Plaintiffs reallege and incorporate by this reference each and every allegation contained in paragraphs 1 through 25, inclusive, of this complaint as if set forth fully herein.

46.     Plaintiffs are informed and believe and based thereon allege that the Defendant made the Transfer to herself without receiving reasonably equivalent value in

COMPLAINT

LAW OFFICES
M. Jonathan Hayes

exchange for the Transfer, as the Transfer was made for no consideration.

47.     Plaintiffs are informed and believe and based thereon allege that the Corporate Plaintiff was insolvent at the time of the Transfer, or became insolvent as a result of the Transfer in that the sum of the Corporate Plaintiff's debts exceeded all of its assets.

48.     The Transfer constitutes a voidable transfer under 11 U.S.C. §§ 544 and 550 and California Civil Code §§ 3439 et seq. and, therefore, is avoidable by the Corporate Plaintiff.

## SIXTH CLAIM FOR RELIEF
### (To Recover Avoided Transfers - 11 U.S.C. § 550)
(Against All Defendants)

49.     Plaintiffs reallege and incorporate by this reference each and every allegation contained in paragraphs 1 through 25, inclusive, of this complaint as if set forth fully herein.

50.     Plaintiffs are informed and believe, and based thereon allege that Defendant was the initial transferee of the Transfer.

51.     Plaintiffs are informed and believe, and based thereon allege that Defendant is not a transferee that took for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the Transfer.

52.     Plaintiffs are informed and believe and based thereon allege that Defendant is not an immediate or mediate good faith transferee of the Plaintiffs, the initial transferee of the Transfer.

53.     Upon avoidance of the Transfer, Plaintiffs are entitled to recover from Defendant, the property transferred or the value of the property transferred, with interest thereon at the maximum legal rate from the date of the Transfer, for the benefit of the Estate pursuant to 11 U.S.C. § 550.

LAW OFFICES
M. Jonathan Hayes

## SEVENTH CLAIM FOR RELIEF
### Declaratory Relief
#### (Against All Defendants)

54.     Plaintiffs reallege and incorporate by this reference each and every allegation contained in paragraphs 1 through 25, inclusive, of this complaint as if set forth fully herein.

55.     An actual controversy has arisen and now exists between Plaintiffs and Defendant regarding the parties' respective rights and obligations to the right of title to and possession of the Real Property.

56.     Plaintiffs contend that as a result of the acts identified hereinabove, Defendant had no authority to make the Transfer which was confirmed by the Arbitrator's Final Award.

57.     Defendant is expected to claim that she had the authority to make the Transfer based on the Term Sheet and other agreements between the parties.

58.     Plaintiffs therefore desire and are entitled to a judicial determination of the parties' rights and duties, and a declaration as to whether Defendant had any authority to make the Transfer.  A judicial determination is needed because Defendant continues to claim title to the Real Property and will likely seek to evict Plaintiffs therefrom, which is unjustified as is set forth in the Final Award.  A judicial determination is also needed because it is anticipated that Defendant will attempt to sell the Real Property to a third party or transfer it again, which will permanently deprive Plaintiffs of the equity, title and use and enjoyment thereof.

## EIGHTH CLAIM FOR RELIEF
### Preliminary and Permanent Injunction
#### (Against All Defendants)

59.     Plaintiffs reallege and incorporate by this reference each and every allegation contained in paragraphs 1 through 25, inclusive, of this complaint as if set forth fully herein.

LAW OFFICES
M. Jonathan Hayes

60.     As stated above, Defendant has wrongfully and unlawfully transferred the Real Property from Corporate Plaintiff to herself without authority and for no consideration.  As a result, Plaintiffs contend that the Transfer is void.

61.     Said Transfer is likely the result of intentional or willful and wanton conduct by Defendant.  Based on the foregoing and as alleged above, the Transfer was unlawful and void, including as to any subsequent third-party buyers.

62.     Injunctive relief is required due to Defendant's proceeding forward despite her lack of authority and the Final Award.

63.     By reason of the wrongful and unlawful Transfer, Plaintiffs will sustain great and irreparable injury because they will permanently lose their property making it impossible for them to obtain adequate relief by way of monetary damages because of the unique nature of real property and, Plaintiffs therefore, are without an adequate remedy at law.

64.      In addition, if Defendant evicts them and/or sells the Real Property to a third party, it will be difficult if not impossible for Plaintiffs to recover said property because said third party could potentially be protected as a bona fide purchaser for value.

65.     Plaintiffs will have sustained damages, and, if the Transfer is not set aside, will sustain further damages in an undetermined amount.

66.     Plaintiffs therefore seek to enjoin any further efforts to sell or transfer the Real Property as well as to evict them from the Real Property.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs YIN TING, RUFINO VASQUEZ and JM SUPERMARKETS, INC. pray for judgment against Defendants as follows:

1.     For actual damages according to proof;

2.     For compensatory damages as permitted by law;

3.     For consequential damages as permitted by law;

4.     For statutory damages as permitted by law;

5.     For punitive damages according to proof;

LAW OFFICES
M. Jonathan Hayes

6. For equitable relief as permitted by law including cancellation of the instruments described herein, rescission of the foreclosure sale, and quieting title in the Plaintiffs,;

7. For injunctive relief as permitted by law;

8. For interest as permitted by law;

9. For reasonable attorneys' fees and costs;

10. For such other and further relief as this Court deems just and proper.

Dated: November 13, 2024

By: _/s/ Matthew D. Resnik_____
M. Jonathan Hayes
Matthew D. Resnik
*Attorneys for Plaintiffs* YIN TING, RUFINO VASQUEZ and JM SUPERMARKETS, INC.

LAW OFFICES
M. Jonathan Hayes

# EXHIBIT A

# TERM SHEET FOR PURCHASE AND SALE OF
# JM SUPERMARKETS, INC. DBA
# LOS CUATES SUPERMERCADO Y TAQUERIA
### (the "Term Sheet")

1. **Purchaser**: Rufino Vasquez and Yin Ting, ("Purchaser").

2. **Seller**: Maria Ochoa Barajas ("Seller"),

3. **Transaction Structure**: Purchaser will purchase all the stock shares of JM Supermarkets, Inc. DBA Los Cuates Supermercado y Taqueria owned by Seller (the "Business"). Sale shall become effective and complete upon execution of the Term Sheet and the Promissory Note (*Attached and incorporated by reference*).

4. **Assets Purchased**: All of the tangible and intangible assets owned and/or used by Seller in connection with the ownership and operation of the Business (other than the Excluded Assets (as defined below)), including, without limitation, inventory, prepaid expenses, customer deposits and other customer prepayments, work- in-progress, equipment, fixtures, furniture, computer software and hardware, ongoing contracts, leases and license agreements, books and records (including vendor and customer lists and information), marketing materials, intellectual property, the Business name, domain names and web sites, telephone number(s) and goodwill, free and clear of all liens, claims and encumbrances (collectively, the "Purchased Assets").

5. **Business and Real Property**: Seller will continue operations of Business until July 10, 2023. Effective, July 10, 2023, Buyer will be responsible for all business operations and Seller is not liable for any future obligations, responsibilities, liabilities once the transfer of management and ownership changes. Seller will retain ownership of the real property, 220 San Felipe Rd., Hollister, CA 95023 located in San Benito County (hereinafter referred to as "Property"), same location herein for which Business is currently located. Seller and Purchaser shall enter into a separate lease agreement for the lease of said Property (*Attached and incorporated by reference*).

6. **Excluded Assets**: The Purchased Assets would not include the real property described in Article 5 and certain personal assets of the owner and/or employees located at Seller's offices, the organizational records of Seller, and other items typically considered excluded assets in transactions of this type (the "Excluded Assets").

7. **Assumed Liabilities**: Purchaser shall assume various liabilities of Seller including: (i) all open equipment contracts as identified in Exhibit A – together with the respective leases ;

(ii) Seller's current obligations under the SBA Loan in the amount of $2,000,000 and, (iii) the obligation to complete such items of work in progress as provided for in a definitive purchase agreement. (*Attached & incorporated by reference*).

8. **SBA Loan Obligation**: Purchaser will assume the SBA loan pursuant to, and in accordance with SBA guidelines. (SBA loan agreement is attached hereto as Exhibit C) The outstanding obligations under the SBA loan shall cease upon the earlier of (1) The repayment of the entire loan obligation within three (3) years of the assumption of the loan or (2) Purchaser assuming the loan directly from the SBA with Borrower being the only one liable on the loan. If either (1) or (2) is not satisfied within three (3) years, Lender can demand performance of (1) or (2) within ninety (90) days of a written request to perform. In the event the Purchaser is unable to perform under this section, Lender shall have the right to demand 25% of Borrower's gross yearly sales to make payments to the SBA, until the loan obligation is paid in full. Lender shall have the right to review Borrower's financial to determine Borrower's yearly gross sales.

9. **Purchase Price and Payment Terms; Escrow**: $4,500,000.00 (the "Purchase Price"), payable as follows:
   The Purchase Price shall be payable as follows: (i) 200,000 non-refundable security deposit in cash or other immediately available funds as of March 18, 2023; and (ii) $1,300,00.00 cash down payment; (iii) $2,000,000 SBA loans and the obligations under said note. (*Attached & incorporated by reference*) (iii) $1,000,000.00 pursuant to a promissory note, accruing interest at a rate of 4.5% per annum. The promissory note shall become due and payable upon the end of the 3-year loan term with a fixed monthly payment of $29,746.92. The $200,000.00 non-refundable security deposit shall be applied to the total interest accrued for the 3-year term of $70,889, pursuant to the attached Amortization schedule (*Attached and incorporated by reference*) plus other seller offsets. (*Attached & incorporated by reference*). Buyer shall be responsible for the full interest payment even if Buyer pays off the note in full prior to the 36-months term .

10. **Employment Agreements**: Purchaser may offer employment to certain of Seller's employees as of the closing date but shall be under no obligation to do so.

11. **Non-Compete Agreement**: Seller will execute a non-compete and non- solicitation agreement within the city of Hollister. (Hollister city limits) with the same term length as the lease agreement, in a form satisfactory to Purchaser. The parties agree that this subsection will not apply, and the covenant not to compete will not be enforced for any joint ventures between the parties in similar businesses operations as the business identified in subsection 3.

12. **Closing**: The transaction contemplated herein shall close no later than the close of business on July 31, 2023, or such earlier date as agreed by the parties.

13. **Representations, Warranties and Indemnities**: The parties will make standard representations and warranties made by sellers and purchasers in transactions of this type. These representations and warranties will survive the closing for a period of 12 months (the "Survival Period"): provided, however, that for representations and warranties related to taxes, employee benefits and environmental matters, the Survival Period shall be for a period of the applicable statute of limitations plus an additional 90 days. Seller's indemnification obligations shall not exceed $500,000 (the "Seller Cap") and shall be subject to a deductible of $20,000 (the "Seller Deductible"). The Survival Period, Seller Cap and Seller Deductible will not apply to breaches of Seller's fundamental representations and warranties (authorization, existence and power, required consents, capitalization and binding effect). Seller warrants there are no pending labor, ADA, vendor claims. The seller also warrants there are no sales, income or employment tax audits. Seller also warrants that any tax obligations incurred up to the transfer of ownership will be seller's responsibility.

14. **Material Conditions**: Closing of the transaction is conditioned upon the following customary terms and conditions:
    a. Purchaser's satisfactory completion of due diligence;
    b. Purchaser's receipt of cash proceeds necessary to finance the transaction, pay for related fees and expenses, and provide adequate ongoing working capital;
    c. The receipt of any regulatory approvals and third-party consents, on terms satisfactory to Purchaser;
    d. The receipt of Buyer's permits and licenses to assist with the transition of running the Business;
    e. Negotiation and execution of mutually satisfactory definitive agreements; and
    f. There being no material adverse change in the Business, results of operations, prospects, condition (financial or otherwise) or assets of the Business.

15. **Ordinary Course of Business**. Seller will: (i) conduct the Business in the ordinary course in a manner consistent with past practice; (ii) maintain its properties and other assets in good working condition (normal wear and tear excepted), and (iii) use its reasonable best efforts to maintain the Business and its employees, vendors, customers, assets and operations as an ongoing concern in accordance with past practice. Seller shall follow all city guidelines and ordinances and shall perform the necessary maintenance pursuant to standard business practice and city requirements for recyclables, grease traps and other city requirements.

16. **Permits and Licenses**. Purchaser shall use Seller's permits and licenses necessary to operate the Business. Seller shall deliver to Purchaser appropriate documentation and information to assist during the transition, pursuant to this sale.

17. **Revenue:** During the repayment period of the promissory note and the repayment of the SBA loan in full, Buyers agree that revenues from business operation shall continue to meet the 2022 revenues and will not decline less that 5 percent from the 2022 tax year.

18. **Business Hours:** Buyers agree to retain the same business hours of operations for the next three years or the completion of all payments under the promissory note.

19. **Due Diligence.** Seller will allow Purchaser and its advisors full access to the facilities, records, employees, customers, vendors, and advisors of the Business for the purpose of completing Purchaser's due diligence review. The due diligence investigation will include a complete review of the financial, legal, tax, environmental, intellectual property, labor records and agreements of the Business, and any other matters as Purchaser's accountants, tax and legal counsel, and other advisors deem relevant,

20. **Confidentiality:** Each party will keep negotiations and all information provided to the other party confidential. All materials belonging to either party will be returned to the rightful owner if a definitive transaction is not successfully completed.

21. **No Announcement:** Neither party will issue a press release or other announcements nor make any disclosure concerning the transaction contemplated by this Term Sheet without the prior approval of the other, which approval will not be unreasonably withheld.

22. **Fees and Expenses:** Each party will bear its own expenses, including legal, accounting and other advisory fees and expenses in connection with the proposed transaction.

23. **Default:** In the event of default by Buyer and Seller exercises the right to terminate and re-occupy, Seller is not entitled to a refund of any of the monies deposited.

24. **Exclusivity:** Commencing immediately, Seller and its agents will withdraw Seller, the Business and the Purchased Assets from the market and will not, nor will Seller permit any of its shareholders, officers, employees or agents, directly or indirectly, to solicit, discuss, encourage or accept any offers for the purchase of Seller, the Business and/or the Purchased Assets, whether as a primary or back-up offer, or take any other action with the intention or reasonably foreseeable effect of leading to any commitment or agreement to sell Seller, the Business and/or the Purchased Assets. The obligations set forth in this Section will terminate on December 31, 2023 if by such date a definitive purchase agreement has not been executed and delivered by the parties.

25. **Termination:** This Term Sheet will automatically terminate and be of no further force and effect upon the earlier of: (i) execution of definitive agreements by Purchaser and Seller; (ii) the mutual agreement of Purchaser and Seller; and (iii) 11:59P.M. on August 31, 2023. Notwithstanding anything in the previous sentence, the termination of this

Term Sheet shall not affect any rights any party has with respect to the breach of this Term Sheet by another party prior to such termination.

26. **Binding Effect**: Except as specifically set forth in the Sections 17 through 21 (collectively, the "Binding Sections") this Term Sheet is not a legally binding agreement and except as set forth in the Binding Sections, no binding agreement or obligation will exist prior to the execution and delivery of a definitive agreement (if at all), regardless of any subsequent negotiations, statements (written or oral) or activities of the parties or their agents or representatives.

This Term Sheet and the Binding Sections shall be governed by and construed in accordance with the laws of the State of California, without regard to conflict of law provisions. This Term Sheet may be executed in one or more counterparts, each of which shall be deemed an original, and all of which, when taken together, shall be deemed to constitute one and the same agreement.

[Signature Page Follows]

Please indicate your approval of the terms and conditions of the Term Sheet by executing this Term Sheet in the space provided below and retiming one executed copy to the other party.

Dated:

Purchaser: **Rufino Vasquez**

Dated:

Purchaser: **Yin Ting**      4-12-23

Dated:

Seller: **Maria Ochoa Barajas, President of JM Supermarkets Inc., DBA Los Cuates Supermercado y Taqueria**

**Exhibit A**

**Excluded Assets List:**

1. Building & Land – 220 San Felipe Road, Hollister CA 95023
2. All vehicles owned by the Company;
3. 2 Storages;

**Back Parking Lot:**

Seller and Purchaser agree to coordinate use of the parking lot that is not currently in use for the business operations. Purchaser will consult with Seller and obtain authorizing regarding the use of the parking lot. Seller agrees to accommodate the Purchaser to facilitate the use of the back parking lot. Buyer needs Seller's permission for use of the parking lot.

**Exhibit B**

**Liabilities/Leases Assumed by Buyer:**

1. Current SBA Loan of $2,000,000 (Business assets as collateral)
2. All Equipment Leases
3. Meat Case
4. Store Registers
5. Forklift
6. Olympic Bailex Machine
7. Scales
8. Refrigerator



**Exhibit C:**

# <u>EXHIBIT B</u>

Recording requested by (name):

**Maria Ochoa Barajas, for**

**J M Supermarkets, Inc.**

When recorded, mail this deed and tax

statements to (name and address):

Maria Ochoa Barajas

3022 Monte Cristo Ct

Hollister, CA 95023



**2024-0006040**

FRANCISCO DIAZ
SAN BENITO CLERK-RECORDER
Friday, Sep 20, 2024 03:06:33 PM

| Titles: 1 | Pages: 4 |
|---|---|
| Fees: | $26.00 |
| CA SB2 Fee: | $75.00 |
| Taxes: | $0.00 |
| Total: | $101.00 |

## QUITCLAIM DEED

Assessor's Parcel No.: 053-370-014-000

DOCUMENTARY TRANSFER TAX

$ 0

EXEMPTION (R&T CODE) 11930

EXPLANATION 11930 Gift

Signature of Declarant or Agent determining tax

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, J M SUPERMARKETS, INC, (the "Grantor"), hereby remise and release as well as quitclaims, unto Maria Ochoa, not married, (the "Grantee"), the following described real property in the County of San Benito, State of California (the "Land"):

SEE DESCRIPTION ON EXHIBIT A

*Quitclaim Deed*

Date: 8/28/24

J M Supermarkets, Inc

Per: _____

Maria Ochoa Barajas, For J M Supermarkets, Inc.

## EXHIBIT "A"
### Legal Description

**For APN/Parcel ID(s):  053-370-014-000**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF HOLLISTER, COUNTY OF SAN BENITO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

THAT PART OF HOMESTEAD LOT 21 OF THE SAN JUSTO RANCHO, ACCORDING TO THE MAP THEREOF FILED JULY 21, 1876, IN VOL. 1 OF MAPS, AT PAGE 64, SAN BENITO COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING AT THE POINT OF INTERSECTION OF THE WESTERLY LINE OF SAN FELIPE ROAD, WITH THE SOUTHERLY LINE OF FLORA AVENUE, SAID POINT OF BEGINNING BEING THE NORTHEASTERLY CORNER OF THAT CERTAIN PARCEL OF LAND, DESCRIBED AS "PARCEL NO. 1" IN THE DEED FROM JASPER H. LAWN, ALSO KNOWN AS J.H. LAWN, A SINGLE MAN, TO ABIJAH C. MOORE, DATED SEPTEMBER 25, 1919 AND RECORDED SEPTEMBER 27, 1922, IN VOL. 68 OF DEEDS, AT PAGE 441, SAN BENITO COUNTY RECORDS; THENCE FROM SAID POINT OF BEGINNING; ALONG THE SAID WESTERLY LINE OF SAN FELIPE ROAD, SOUTH 2 DEG. 15' WEST 167.40 FEET TO THE NORTHEASTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO FRANK BORELLI, AND WIFE, BY DEED FROM WILLIAM CORBITT AND WIFE, DATED JANUARY 17, 1930 AND RECORDED JANUARY 22, 1930 IN VOL. 44 OF OFFICIAL RECORDS, AT PAGE 57, RECORDER'S FILE NO. 13045, SAN BENITO COUNTY RECORDS, THENCE LEAVING THE SAID WESTERLY LINE OF SAN FELIPE ROAD, ALONG THE NORTHERLY LINE OF THE SAID PARCEL OF LAND SO CONVEYED TO FRANK BORELLI AND WIFE, NORTH 87 DEG. 45' WEST 293.40 FEET TO THE NORTHWESTERLY CORNER THEREOF, IN THE WESTERN LINE OF THAT CERTAIN 1.37 ACRE PARCEL OF LAND DESCRIBED IN THE DEED FROM MICHAEL COLLIGAN, TO J. H. LAWN, DATED JUNE 1, 1905 AND RECORDED JUNE 5, 1905 IN VOL. 33 OF DEEDS, AT PAGE 326, SAN BENITO COUNTY RECORDS, THENCE ALONG THE WESTERLY LINE OF THE SAID 1.37 ACRE PARCEL OF LANDS AND THE PROLONGATION THEREOF, NORTH 2 DEG. 15' EAST 167.40 FEET TO THE NORTHWESTERLY CORNER OF SAID "PARCEL NO. 1" IN THE SOUTHERLY LINE OF FLORA AVENUE AFORESAID; THENCE ALONG THE SAID SOUTHERLY LINE OF FLORA AVENUE SOUTH 87 DEG. 30' EAST 293.40 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, ALL THAT PORTION THEREOF CONVEYED BY A. C. MOORE TO THE STATE OF CALIFORNIA FOR HIGHWAY PURPOSES, BY DEED DATED OCTOBER 27, 1922 AND RECORDED JUNE 5, 1923, IN VOL. 2 OF OFFICIAL RECORDS, AT PAGE 43, SAN BENITO COUNTY RECORDS.

ALSO EXCEPTING THEREFROM, ALL THAT PORTION THEREOF CONVEYED BY ROBERT F. LAWRENCE AND CARMEN W. LAWRENCE TO THE CITY OF HOLLISTER BY GRANT DEED DATED MARCH 31, 1976 AND RECORDED APRIL 25, 1976 IN VOL. 429 OF OFFICIAL RECORDS, AT PAGE 654, SAN BENITO COUNTY RECORDS.

_Quitclaim Deed_

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF CALIFORNIA
COUNTY OF _San Benito_

On _8/28/2024_ before me,
_Cristina Nicole Amarante Notary Public_
(insert name and title of the officer)

personally appeared _Maria Ochoa Barajas_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/their/her authorized capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

CRISTINA NICOLE AMARANTE
Notary Public - California
San Benito County
Commission # 2496115
My Comm. Expires Aug 28, 2028

Signature _Cristina Nicole Amara_ (seal)

**EXHIBIT C**

Yin Ting, and Rufino Vasquez,

            Claimants,

and

Maria Ochoa Barajas,

            Respondent.

Maria Ochoa Barajas,

            Counter-Claimant,

and

Yin Ting, Rufino Vasquez, Zhao Fengxiang aka Tom Jao

            Counter-Respondents.

**FINAL AWARD**

**Date of Arbitration: August 26-27, 2024**

**Place of Arbitration: Los Angeles, CA**

**Date of Interim Award: September 19, 2024**

**Date of Final Award: October 2, 2024**

    <u>Parties and Counsel</u>.  The parties to this arbitration are identified in the caption and are represented as follows:

Jules L. Kabat Esq.
David Taran, Esq.
Leeran Abukasis Esq.
Russ, August & Kabat
12424 Wilshire Blvd.

Maria Ochoa Barajas
*In pro per*

Case: 24-05047   Doc# 1   Filed: 11/13/24   Entered: 11/13/24 19:52:09   Page 33 of 59

12th Floor
Los Angeles, CA 90025
Tel: 310-826-7474
Email: jkabat@raklaw.com
Email: dtaran@raklaw.com
Email: labukasis@raklaw.com
Counsel for: Yin Ting, Rufino Vasquez

The undersigned Arbitrator has been designated in accordance with an Agreement entitled Addendum I, Promissory Note – Dispute Resolution dated April 12, 2023, which contains an arbitration provision at Paragraph B, "Arbitration of Disputes," which provides: "any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration." The agreement to arbitrate provides that the Arbitrator shall apply the California Arbitration Act, the applicable substantive law is the law of the State of California, and the JAMS Comprehensive Arbitration Rules and Procedures ("Rules") apply. Enforcement of the agreement to arbitrate is governed by the Federal Arbitration Act.

The parties were party to an action filed in the San Benito Superior Court of California, Case No. CU-23-00168, in which the Court granted the petition to compel arbitration and to include additional participants on January 10, 2024.

The Arbitrator, having examined the submissions, proof, and allegations of the parties, finds, concludes, and issues this Interim Award as follows.

## I.    INTRODUCTION AND PROCEDURAL STATEMENT

Claimants Yin Ting, Rufino Vasquez, and Rosalinda Peres-Ornelas filed a Demand for Arbitration on or about October 2, 2023, which was served on Respondent Maria Ochoa Barajas. (Respondent's San Benito Superior Court verified complaint against Claimants had been filed on August 10, 2023, but not then served or disclosed to Claimants.) Claimants Yin Ting and Rufino

Vasquez[1] filed an Amended Demand on February 16, 2024, and served Respondent. Respondent filed a Response and Counterclaim on March 4, 2024, and added Zhao Fengxiang (sometimes referred to as Tom Jao) as a Counter-Respondent. Zhao Fengxiang, and JM Supermarkets, Inc. DBA Los Cuates Supermercado Y Taqueria were named defendants in Respondent's verified complaint ordered into this arbitration. Respondent's then counsel represented that Respondent's verified complaint would operate as Respondent's counter-claim in arbitration, but Respondent's subsequent counsel later filed and served Respondent's amended counter-demand for arbitration. Claimants' Response to Respondent's Amended Counterclaim was filed with JAMS on March 18, 2024, and was served on Respondent. The claims are arbitrable.

On October 6, 2023, pursuant to Rule 2 of JAMS Comprehensive Arbitration Rules, Claimants Yin Ting and Rufino Vasquez ("Claimants") filed a Request for Emergency Relief for protection from Respondent Maria Ochoa Barajas's September 28, 2023, self-help acts.

On October 17, 2023, the Honorable Barry Baskin, Judge of the Superior Court (Ret'd) ("Emergency Arbitrator"), was appointed as Emergency Arbitrator. On October 19, 2023, the Emergency Arbitrator held an Emergency Relief Conference hearing. Jules L. Kabat, and David A. Taran of Russ, August & Kabat appeared on behalf of Claimants. Sydney Jay Hall of Law Office of Sydney Hall and Christopher Rusca of Sagaser, Watkins & Wieland PC appeared on behalf of Respondent. On October 20, 2023, the Emergency Arbitrator issued an order to protect the status quo and remedy Respondent's conduct as set forth in the evidence:

(1) Claimants' continued possession and use of the premises located 220 San Felipe Road, Hollister, California 95023 ("Premises") pursuant to the written lease ("Lease") between Claimants and Respondent shall continue without interference from Respondent and subject to the terms of that lease;

(2) Claimants' continued operation of Los Cuates Supermercado Y Taqueria ("Business") on the Premises shall continue without direct or indirect interference from Respondent or agents of Respondent.

(3) Claimants are authorized and entitled to apply for and obtain permits to repair and maintain, and to repair and maintain, the Premises, including without limitation regarding the

---

[1] Perez-Ornelas not named as a Claimant in the Amended Demand. Although Respondent named her in the Counterclaim, it does not appear that she was served.

Notice of Unsafe Structure issued on October 2, 2023, by the City of Hollister Development Services Department, and otherwise, without interference from Respondent and subject to the terms of the lease; and

(4) Claimants are entitled to protect and secure the physical property and perishable goods in the Premises, without direct or indirect interference from Respondent.

This arbitration encompasses all issues, claims and defenses in, relating to and arising from the referenced court and arbitration pleadings.

Claimant filed a Request for Interim Relief on February 16, 2024, to prevent, and protect against, increasing and continuing material harm and prejudice otherwise unavoidably caused by Respondent's wrongful conduct, to avoid irreparable harm, and to maintain the status quo. The Request was granted by the undersigned Arbitrator on March 6, 2024, as follows:

(a) **Promissory Note payments** shall be made by Claimants by deposit into the Account [an escrow account under Arbitrator control].

(b) **Lease payments** shall be made by Claimants into the Account. Operating expenses to be paid either directly by Claimants per the Lease or from the Account. Underlying debt service (the mortgage on the building) to be paid from the Account.

(c) **Insurance proceeds** Respondent received from April 10, 2024, regarding the Business and/or Premises, shall be deposited by her into the Account; and all further insurance proceeds be made into the Account by the insurer instead of to Respondent. Respondent shall promptly produce all records concerning making, adjusting and payment of each such claim.

(d) **Refinancing proceeds** from a loan sought by Respondent against the Premises shall be deposited into the Account. Prior to any such loan, Claimants must receive a subordination, non-disturbance and attornment agreement (SNDA) in form and substance reasonably acceptable to Claimants.

(e) **Respondent must cooperate and execute documents** necessary or appropriate to effect, (i) the **release of Business funds held by Bank of America** to be placed into the Account; (ii) the stay of *Capital Resource International, Inc. v. J M Supermarkets, Inc. dba Los Cuates Supermercado Y Taqueria and Maria Ochoa aka Maria Ochoa Barajas,*

Los Angeles Superior Court Case No. 23VECV05005; and (iii) the **transfer of the liquor license for the Business**.

On March 11, 2024, the Arbitrator issued an Emergency Order Granting Interim Relief to address and remedy Respondent impermissibly and fraudulently entering into multiple financing and loan transaction agreements purportedly on behalf of the Business, personally pocketing approximately $1,000,000.00 of proceeds, and then defaulting, causing lawsuits and judgment against the Business. The Emergency Order ordered Respondent not to act contrary to the relief requested by Claimants pending the hearing on the Interim Relief, not to take any actions that interfere with the requested relief set forth below, effective immediately, and continuing through March 15, 2024, or further Order:

(1) Within ten days, identify and produce all records of seeking, negotiating and/or executing all loan, financing, purchase, lease, and other agreements of any nature in any way concerning financing, loans, ownership, assets, licenses, liabilities, debts, operation or otherwise of the Business and Premises, whether consummated or not, from January 1, 2023, to date, including without limitation regarding, (i) each loan identified in paragraph 22 of Respondent's amended counter claims, (ii) *Austin Business Finance, LLC v. JM Supermarkets, Inc. and Maria Ochoa Barajas,* San Benito Superior Court Case No. CU-23-00226, and (iii) *Capital Resource International, Inc. v. J M Supermarkets, Inc. dba Los Cuates Supermercado Y Taqueria and Maria Ochoa aka Maria Ochoa Barajas*, Los Angeles Superior Court Case No. 23VECV05005.

(2) Immediately, not transfer, spend or in any way use, and within ten days deposit into the Account, all attendant funds, proceeds and consideration in any way obtained from the foregoing.

(3) Immediately, cease and desist from directly and/or indirectly, alone or with any other person, negotiating to, attempting to, entering into and/or creating any agreement or liability, of any nature, and/or otherwise purporting to act and/or acting on behalf of the Business or Premises.

(4) Immediately, upon request of Claimants or their counsel, execute all documents seeking to set aside or stay, setting aside and/or staying any complaint, judgment or order in any court case brought or asserted against the Business or Premises.

(5) Immediately, indemnify Claimants and the Business from all claims, expenses, fees, costs, damages and liabilities in any way arising from the foregoing.

On March 18, 2024, the Arbitrator issued a further Interim Relief Order, repeating the provisions of the March 6 Order:

(a) **Promissory Note payments** shall be made by Claimants by deposit into the Account.

(b) **Lease payments** shall be made by Claimants into the Account. Operating expenses to be paid either directly by Claimants per the Lease or from the Account. Underlying debt service (the mortgage on the building) to be paid from the Account.

(c) **Insurance proceeds** Respondent received from April 10, 2024, regarding the Business and/or Premises, shall be deposited by her into the Account; and all further insurance proceeds be made into the Account by the insurer instead of to Respondent. Respondent shall promptly produce all records concerning making, adjusting and payment of each such claim.

(d) **Refinancing proceeds** from a loan sought by Respondent against the Premises shall be deposited into the Account. Prior to any such loan, Claimants must receive a subordination, non-disturbance and attornment agreement (SNDA) in form and substance reasonably acceptable to Claimants.

(e) **Respondent must cooperate and execute documents** necessary or appropriate to effect, (i) the **release of Business funds held by Bank of America** to be placed into the Account; (ii) the stay of *Capital Resource International, Inc. v. J M Supermarkets, Inc. dba Los Cuates Supermercado Y Taqueria and Maria Ochoa aka Maria Ochoa Barajas*, Los Angeles Superior Court Case No. 23VECV05005; and (iii) the transfer of the liquor license for the Business.

(f) **Within ten days, identify and produce all records** of seeking, negotiating and/or executing all loan, financing, purchase, lease, and other agreements of any nature in any way concerning financing, loans, ownership, assets, licenses, liabilities, debts, operation or otherwise of the Business and Premises, whether consummated or not, from January 1, 2023, to date, including without limitation regarding, (i) each loan identified in paragraph 22 of Respondent's amended counter claims, (ii) *Austin Business Finance, LLC v. J M Supermarkets, Inc. and Maria Ochoa Barajas,* San Benito Superior Court Case No. CU-

23-00226, and (iii) *Capital Resource International, Inc. v. J M Supermarkets, Inc. dba Los Cuates Supermercado Y Taqueria and Maria Ochoa aka Maria Ochoa Barajas*, Los Angeles Superior Court Case No. 23VECV05005.

(g) **Immediately, not transfer, spend or in any way use, and within ten days deposit into the Account,** all attendant funds, proceeds and consideration in any way obtained from the foregoing.

(h) Immediately, cease and desist from directly and/or indirectly, alone or with any other person, negotiating to, attempting to, entering into and/or creating any agreement or liability, of any nature, and/or otherwise purporting to act and/or acting on behalf of the Business or Premises.

(i) **Immediately, upon request of Claimants or their counsel, execute all documents seeking to set aside or stay, setting aside and/or staying any complaint, judgment or order** in any court case brought or asserted against the Business or Premises.

In addition, the Order advised Respondent's counsel that their client needed to complete the paperwork necessary to allow Claimants to assume or payoff the SBA loan, which paperwork Claimants' counsel had provided to Respondent's counsel.

On April 15, 2024, a Status Conference was held, and the Arbitration Hearing was set for confirmed for August 26-30, 2024, at the Century City Resolution Center of JAMS. The Parties were ordered to exchange witness lists, and exhibit lists, excepting only documents to be offered solely for impeachment, not later than August 12, 2024

On April 24, 2024, Respondent's counsel submitted notice that Respondent had filed a Chapter 13 bankruptcy case on April 3, 2024, and that the automatic stay was in effect. Claimants moved for relief from automatic stay, which was granted on June 17, 2024. The Arbitrator reconfirmed that the Arbitration Hearing was on calendar for August 26-30, 2024.

On June 18, 2024, the Arbitrator ordered Respondent to rescind the 30-Day Notice she had served on Claimants in direct contravention of prior Orders issued by the Arbitrator in this matter on March 6, 2024, March 18, and April 5, 2024, which prior Orders required Claimants to make payments under the Lease into a separate Account, instead of to Respondent, to protect the status quo and remedy Respondent's conduct as set forth in the evidence.

On July 12, 2024, the Arbitration Hearing dates were modified to August 26-27, 2024.

On July 18, 2024, the Arbitrator issued an Order granting Claimants' Request for an Emergency Order ordering Respondent immediately to dismiss her July 17, 2024, unlawful detainer complaint and serve copies of the dismissal on Claimants' counsel and the Arbitrator.

Respondent repeatedly failed to comply with, and has violated, the above Orders.

## II.     THE ARBITRATION HEARING

August 12, 2024 was the deadline for the Parties to submit and exchange exhibit lists and witness lists for the Arbitration Hearing commencing August 26, 2024. Claimants Yin Ting and Rufino Vasquez submitted their exhibit list and witness list; Respondent Maria Ochoa Barajas did not. Rather Respondent submitted more than 145 documents and sets of documents, along with a list of eleven witnesses that she "requested," most of whom had not previously been disclosed as required. Most of the documents submitted by Respondent had not previously been exchanged or produced to Claimants.

Respondent was again ordered to submit an exhibit list identifying the exhibits that she intends to introduce, and to provide her witness list, identifying each witness, the manner in which each witness is expected to testify (in-person, telephonically or by video conference or by affidavit or declaration), a brief description of the witness's testimony, and an estimate of the length of the direct testimony, as previously ordered.

By way of background, these requirements were set by the Arbitrator and agreed to by the Parties during the Preliminary Hearing conducted on February 5, 2024, at which counsel for both Parties had appeared. Jules L. Kabat Esq., David Taran, Esq., and Leeran Abukasis Esq., appeared on behalf of Claimants Yin Ting, Rufino Vasquez, Rosalinda Peres-Ornelas; Sidney J. Hall, Esq and David G. Finklestein, Esq., appeared on behalf of Respondent Maria Ochoa-Barajas.

Following the Preliminary Hearing, the Arbitrator had issued the Report of Preliminary Hearing and Case Management Order No. 1, (Feb. 7, 2024), confirming the deadlines and schedule that had been set by the Arbitrator, with the agreement of the Parties. Specifically, Case Management Order No. 1, required the parties to complete an "initial exchange of all relevant, non-privileged documents (including ESI), relevant to the dispute or claim, including, without limitation, copies of all documents in their possession or control on which they rely in support of

their positions, names of individuals whom they may call as witnesses at the Arbitration Hearing and names of all experts (if known) who may be called to testify at the Arbitration Hearing, on or before March 19, 2024." Case Management Order No. 1 and Rule 17 further provides that the obligation to exchange all relevant documents is a continuing one, and that the Parties are obligated to provide all relevant documents as they become aware of new documents or information. "Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause." *Id.*

Claimants objected to Respondent's last-minute (August 2024) production of previously unidentified or disclosed documents as untimely.

The Arbitration Hearing was held on August 26-27, 2024, in person in Los Angeles, California, pursuant to prior agreement of the parties. Although Respondent has been represented by at least five lawyers in the arbitration and in court, to whom she represented that she has paid over $300,000.00, she appeared *in pro p*er at the Arbitration Hearing. Respondent requested the presence of a translator, her office assistant, for the Arbitration Hearing, which the Arbitrator allowed.

Respondent appeared at the arbitration hearing with dozens of large binders of previously unproduced records, and several witnesses who had not previously been identified. Claimants objected to the introduction and use of the records, and the testimony of the witnesses not previously identified. Pursuant to JAMS Rule 17 "[d]ocuments that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause." However, the Arbitrator agreed to allow Respondent to select the core documents upon which she intended to rely from among the large document drop, and identify those to Claimants, for use at the Hearing, and further agreed to allow Respondent's witnesses, to testify, to the extent they had relevant testimony.

The following witnesses testified: Fengxiang Zhao, Yin Ting, Rufino Vasquez, Maria Ochoa Barajas, Blanca Aguilar, Rosalinda Ornelas, Perez Carmela Flores, Rachel Sanchez, Christian Ochoa, Constanza Molina, Melissa Gutierrez**,** Yesenia Solano, and Kamal Bahia.

Respondent had refused to pay her share of the costs of the arbitration. Under JAMS Rule 31, Respondent's failure and refusal bars her from seeking and obtaining affirmative relief, subject to the Arbitrator's discretion, and Respondent was repeatedly so advised by the Arbitrator prior to the Arbitration Hearing.

The Arbitrator discussed these issues with the Parties, and ruled that Respondent would be allowed to call her "requested witnesses" to testify, and, as stated above, the Arbitrator asked Respondent to select a set of her core documents (her binders held thousands of pages), and provide those to Claimants. The Arbitrator scheduled a break in the Hearing to permit Respondent to select those documents/records upon which she wished to rely, and she provided that set to Claimants after the break. Further, the Arbitrator allowed Respondent to present all of her affirmative claims, notwithstanding her refusal to pay arbitration fees.

Respondent called her witnesses and they testified. Respondent testified in a narrative form on direct for several hours on two days, presenting her case at length, as well as showing a video and introducing exhibits. At the conclusion of her direct testimony, she confirmed that she had nothing further to offer. Claimant's counsel began cross-examination, but Respondent refused to answer questions or testify further.

During the Arbitration Hearing, the parties informed the Arbitrator that they had a pending matter in court set to be heard on September 23, 2024, and requested that the Arbitrator issue the Award in advance of that date. An Interim Award was issued on September 20, 2024, with the necessary facts and analysis set forth. Claimants were declared the prevailing party and was requested to submit a request for fees, costs, and interest, by September 27, 2024, which they did. (Claimants' Final Award Submission re Attorney Fees, Interest, Costs, Punitive and Exemplary Damages, and Other Final Award Issues).

III.    FACTS AND ANALYSIS

A.  <u>Facts</u>

The following facts are those facts found by the Arbitrator to be true and necessary to the Award. To the extent that this recitation differs from any Party's position, that is the result of determinations as to credibility, determinations of relevance, burden of proof considerations, and the weighing of the evidence, both oral and written.

Pursuant to Case Management Order No. 1 (Feb. 7, 2024) the parties had been encouraged to stipulate to agreed or uncontested facts and to provide such stipulation to the Arbitrator at the commencement of the Hearing. Claimants submitted a proposed Stipulation, to which Respondent had not responded. At the commencement of the Hearing, the Arbitrator went through the proposed Stipulated Facts. The following facts were stipulated to by the parties at that time, or during the course of the Hearing.

1. Claimants and Respondent were jointly represented by Ronda Edgar, Esq., in connection with the purchase and sale of the Business.

2. Respondent was represented by Ronda Edgar, Esq. in connection with various business dealings before the Parties agreed to the purchase and sale of the Business.

3. Respondent was represented by Ronda Edgar, Esq. in connection with certain business dealings unrelated to and not involving Claimants, after April 17, 2023.

4. Claimants and Respondent initialed each page of the Term Sheet.

5. Claimants and Respondent entered into the Promissory Note.

6. Claimants and Respondent entered into the Lease.

7. The Term Sheet, Promissory Note and Lease are collectively the Agreement for the purchase and sale of the Business and lease of the Premises.

8. Claimants paid to Respondent $1,500,000.00 in cash pursuant to the Term Sheet.

9. Respondent turned control of the Business over to Claimants on or about July 10, 2023.

10. The liquor license belonging to the Business was not transferred to Claimants.

11. On or about July 24, 2023, Respondent accessed a Business bank account to transfer $140,000.00 to herself. Bank of America has frozen such funds and will not release them without court order or instruction from all parties.

12. On or about July 6, 2023, Respondent entered into a Future Receivables Sale Agreement with Austin Business Finance, obligating the Business, selling $472,650.00 of Business future account receivables, and receiving $339,350.00, which she personally used.

13. On or about August 2, 2023, Respondent entered into a Payment Rights Purchase and Sale Agreement with Fundworks, LLC, obligating the Business, selling Business future receipts, receiving $98,295.00, which she used. The finance charge on the loan was $49,705.00.

14. On or about August 17, 2023, Respondent entered into a Revenue-Based Financing loan with NFG, LLC, obligating the Business, selling Business future receipts, and receiving $75,000.00, which she used. The finance charge was $49,900.00.

15. On September 12, 2023, Respondent transferred title to the Business Premises from JM Supermarkets, Inc., to MOB Holdings Corporation, which resulted in the loan being accelerated and impending trustee's foreclosure sale.

16. Respondent's Requests for Civil Harassment Restraining Orders against Rufino Vasquez and Tom Jau [Zhao] were dismissed, and she was ordered to pay their attorney fees.

17. Respondent acted to forcibly eject Claimants from the Business on September 28, 2023.

18. Respondent has been charged by the San Benito District Attorney for Violation of Penal Code § 418 in connection with her September 28, 2023, forcible detainer actions.

19. Respondent has not dismissed her Second Unlawful Detainer action which she filed on July 17, 2024.

20. Respondent Barajas transferred title and ownership of the premises back to JM Supermarkets, on August 5, 2024, by quitclaim deed recorded on August 14, 2024, and declared the transfer as a gift.

21. Respondent filed a bankruptcy petition on behalf of JM Supermarkets on August 19, 2024.

In addition to the above, the testimony and exhibits at the Hearing established the following facts evidencing the Parties' conduct and agreements.

In April 2023, Claimants and Respondent entered into three contemporaneous written agreements (collectively "Agreement") for Claimants to purchase Respondent's JM Supermarkets Inc. DBA Los Cuates Supermercado Y Taqueria ("Business") and lease Respondent's underlying property. The Business is a market and taqueria at 220 San Felipe Road, Hollister, California. The Agreement is valid, binding and performed, initially by Claimants and Respondent, but then only by Claimants who continued to make the required lease and Loan payments.

The Agreement consists of the Term Sheet for Purchase and Sale of JM Supermarkets, Inc. DBA Los Cuates Supermercado Y Taqueria ("Term Sheet"); the Promissory Note

("Promissory Note"); and the Lease ("Lease") of the property and improvements underlying the Business ("Premises"). The scope of the purchased "Business" is broad, defined to exclude only the Premises, (covered by the Lease) and inconsequential personal assets and records of Respondent or her employees. ("Assets Purchased: All of the tangible and intangible assets owned and/or used by Seller in connection with the ownership and operation of the Business (other than the Excluded Assets (as defined below)), including, without limitation, inventory, prepaid expenses, customer deposits and other customer prepayments, work- in-progress, equipment, fixtures, furniture, computer software and hardware, ongoing contracts, leases and license agreements, books and records (including vendor and customer lists and information), marketing materials, intellectual property, the Business name, domain names and web sites, telephone number(s) and goodwill, free and clear of all liens, claims and encumbrances (collectively, the 'Purchased Assets')." "Excluded Assets: The Purchased Assets would not include the real property described in Article 5 and certain personal assets of the owner and/or employees located at Seller's offices, the organizational records of Seller, and other items typically considered excluded assets in transactions of this type (the 'Excluded Assets')."

The Parties executed the Term Sheet by initialing each page, including the signature page. Respondent did not sign the signature page, and did not provide an explanation. The Parties also executed the Promissory Note. The Term Sheet states: "Sale shall become effective and complete upon the execution of the Term Sheet and the Promissory Note (Attached and incorporated by reference)." On April 17, 2023, the parties executed the Promissory Note. The incorporated by reference Promissory Note and Lease contain integration clauses.

The Term Sheet also contained a provision requiring Purchaser to assume the SBA loan, which Claimants attempted to do, but Respondent refused to execute the necessary paperwork. The Term Sheet further provided that it would terminate upon the earlier of: "(i) execution of definitive agreements by Purchaser and Seller; (ii) the mutual agreement of Purchaser and Seller; and (iii) 11:59P.M. on August 31, 2023." Respondent argues that this provision means the Agreement was not effective. However, as set forth above, the parties executed the Promissory Note, thus complying with the "effective and complete" language of the Term Sheet. Thus, the sale of the Business was completed on April 17, 2023. and no further agreements were necessary.

In addition, as set forth further herein, both parties performed, at least initially, pursuant to the Agreement, although Respondent later attempted to withdraw her consent.

The Term Sheet states Respondent would operate the Business until July 10, 2023, when Claimants would take over, as they did. Respondent gave Claimants ownership and possession of the Business on or about July 10, 2023.

Claimants paid Respondent the $1,500,000 in cash and check during April and May 2023, as evidenced by signed receipts. Claimants also paid Respondent the additional payments per the Term Sheet, Promissory Note, Lease and subsequent Arbitrator orders. As of the date of the Arbitration Hearing, Claimants had paid the $1,500,000 downpayment, $192,000.00 ($16,000.00 monthly) under the Lease, and $297,469.20 ($29,746.92 monthly) under the Promissory Note.

On or about July 5, 2023, a statement of information was filed with the California Secretary of State with Claimants as the Business officers.

The Arbitrator finds that the sale was "effective and complete."

Claimants invested an additional minimum of $300,000.00 into operating and improving the Business and Premises, retaining and paying employees, buying goods, systems, services, etc. Much of the goods, systems and services Claimants had to purchase, including but not limited to payroll, point of sale ("POS"), security camera, and other systems, were supposed to be included as part of the purchase price for the sale of the Business. However, Respondent refused to transfer and destroyed such systems, requiring Claimants to purchase goods, systems and services that were contractually agreed to be included in the deal for the Business.

Respondent continued to attempt to intimidate Claimants and ruin the Business, claiming that she had not consummated the sale transaction, even after accepting the $1,500,000 downpayment and ongoing Lease and Promissory Note payments.

On or about July 6, 2023, Respondent secretly entered into a Future Receivables Sale Agreement with Austin Business Finance falsely and fraudulently selling $472,650.00 of Business future account receivables, owned by the Business, to personally take $339,350.00. Respondent defaulted, with the result that the Business was sued, and Respondent allowed a $513,735.50 default judgment against the Business.

On or about July 24, 2023, Respondent filed and served a notice of default under the Lease, notwithstanding that the Lease payments had been made.

On or about July 24, 2023, Respondent accessed a Business bank account at Bank of America to transfer $140,000.00 to herself. Bank of America has frozen such funds and will not release them without court order or instruction from all parties.

On or about July 25, 2023, Respondent contacted the restaurant day shift manager, meat department manager, manager and three other key employees of the Business, and instructed them not to go to work until August 1, 2023, brought employees to her home, told them she would take back the Business on August 1, 2023, instructed them not to work at the Business, and stated that she would pay them for their losses.

On or about July 28, 2023, Respondent filed a false and fraudulent statement of information with the California Secretary of State purporting to remove Claimants as officers of the Business.

On or about July 31, 2023, Respondent falsely and fraudulently instructed the United States Postal Service to forward Business mail to her personal address instead of to the Business and Premises.

In or about the end of July 2023, Respondent went to the Business with her lawyer falsely and fraudulently attempting to "take back the Business."

During July 2023, Respondent accessed and altered login information of the Business POS system, restricting Claimants' access, causing the loss of transactions and attendant amounts, and forcing Claimants to buy a new POS system. Respondent also accessed and cancelled the Business ADP timecard and payroll account. Respondent did so to intentionally to interfere with Claimants' ability make payroll and pay employees;  accessed and changed password access to the Business email account barring access, causing Claimants to have to obtain a new website domain; and accessed and restricted Claimants' access to the Business camera/security system, causing Claimants to have to purchase a new system.

On or about August 2, 2023, Respondent secretly entered into a Payment Rights Purchase and Sale Agreement with Fundworks, LLC falsely and fraudulently for the Business, again selling Business future receipts. Respondent personally pocketed $98,295.00 and subsequently defaulted on the loan. The finance charge on the loan was $49,705.00. A lawsuit was filed by

Fundworks, LLC, aka Capital Resource International, Inc. in the Los Angeles Superior Court, Case No. 23VECV05005, for $129,500.00, plus attorney fees of $3,185.00 and costs. That litigation is currently stayed pending adjudication of this arbitration.

On or about August 10, 2023, in violation of her arbitration agreement, Respondent filed a lawsuit in the San Benito Superior Court. Respondent refused to proceed with the arbitration, forcing Claimants to petition to compel arbitration, which was granted.

On or about August 17, 2023, Respondent secretly entered into a Revenue-Based Financing loan with NFG, LLC, again falsely and fraudulently selling Business future receipts. Respondent took $75,000.00 and subsequently defaulted. The finance charge was $49,900.00.

On or about August 24, 2023, Respondent filed requests for civil harassment restraining orders against Claimants in the San Benito Superior Court, harassing and embarrassing Rufino Vasquez and Yin Ting's husband and manager of the Business, Fengxiang Zhao, attempting to restrict Claimants' access, operation and use of the Business and Premises, forcing Claimants to oppose. The Court denied the orders and ordered Respondent to pay Claimants' attorney fees and costs. Throughout the period July 2023 to date, Respondent on several occasions followed Claimants and their employees around town by car, in an attempt to intimidate them.

On or about September 28, 2023, Respondent and others under her direction invaded the Premises, shut off the water, forced out the employees who were there, barricaded themselves inside, seized control of the Premises and Business, physically damaged the Premises and Business, stole more than $60,000.00 in cash, stole and damaged cameras and surveillance equipment, and stole other property of Claimants and the Business, including Mr. Zhao's California Driver's License and wallet. This damage resulted in the County Health Department issuing a red tag, forced the Business to shut down for over a month, and the loss of hundreds of thousands of dollars in perishables. Claimants paid all expenses, and undertook all necessary measures, to get the Business and Premises repaired, operating, and open again.

On September 29, 2023, Respondent filed an unlawful detainer action against Claimants in the San Benito Superior Court. Claimants moved to quash. Respondent dismissed the action after she lost her restraining order cases.

On or around October 12, 2023, Respondent posted Mr. Zhao's stolen California Driver's License on Facebook to the world, particularly directed to the Hollister community and

Business customers, indicating the "new owner" is Asian, and that Hispanic clientele and customers should not use the Business while still owned by Claimants.

On June 6, 2024, Respondent served a second 30 Days' Notice to Pay or Quit.

On July 17, 2024, Respondent filed a second false and fraudulent unlawful detainer action against Claimants in the San Benito Superior Court, ignoring Arbitrator orders not to do so. Claimants answered and defended.

### B. Analysis

Claimants' Amended Demand alleges breach of contract, breach of covenant of quiet enjoyment, breach of covenant of good faith and fair dealing, conversion, misappropriation, violation of Penal Code §§ 418 and 496(c); and interference with actual and prospective business and economic opportunities. Claimants allege this conduct is intentional, reckless, malicious, oppressive and fraudulent. Claimants seek an Award recognizing, declaring, granting, enforcing and awarding all contract, tort, legal and equitable rights, remedies, offsets, damages, punitive damages, treble damages, attorney's fees, arbitration and other costs, and injunctive relief.

1.    Respondent Breached the Agreement.

The elements of breach of contract are contract, performance or excuse, breach, and damages. *Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186. The Parties entered into a valid and binding Agreement for the sale of the Business. The Agreement included all essential terms: description of the assets of the Business that was being purchased, purchase price, payment schedule, schedule for transfer, and the parties' obligations with respect to the purchase of the Business, as well as the incorporation of the Lease of the Premises, and Promissory Note.

As set forth above, the Parties initialed each page, including the signature page and the Exhibit pages, and preformed, with Claimants making all required payments and assuming operation of the Business on July 10, 2023. California law has long recognized that the initials on each page of the Agreement are a sufficient stand-in for a full signature. *Weiner v. Mullaney* (1943) 59 Cal.App.2d 620, 634 (1943) ("[s]ignature by initials has been held to be sufficient under the Statute of Frauds and the Statute of Wills.") Here, Respondent does not deny that she initialed each page of the Agreement. Although she denied that she had received the $1,500,000 downpayment, at the arbitration hearing she acknowledged that she had received the money,

when confronted with receipts that she had signed, and copies of bank statements showing that checks had been cashed.

Respondent argue that she is entitled to rescind the transaction because no "definitive agreement" was entered into by August 31, 2023. However, Respondent cannot take advantage of her obstructionist conduct. Prior to August 31, Respondent attempted to unilaterally terminate the transaction, in breach of the Agreement, and ceased all civil communications with Claimants, preventing the parties from accomplishing a long form agreement. Having accepted $1,500,000 from Claimants, signed the binding Lease for the Premises with Claimants, accepted Claimants' rent, transferred the Business over to Claimants, and allowed Claimants to invest hundreds of thousands of dollars into the Business, Respondent is estopped from arguing that the Agreement was not executed or is not binding.

The Arbitrator finds that Respondent has breached the Agreement. Claimants suffered damages, including lost profits, diminished value, lost perishables, property damages, property replacement, and other damages, set forth below.

### 2. Respondent Breached the Covenant of Good Faith and Fair Dealing.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & General Ins. Co*. (1958) 50 Cal.2d 654, 658 (internal citation omitted).

The Arbitrator finds that Respondent's conduct, as set forth above, i.e., invading the Business and Premises, damaging and destroying and stealing property, trying to ruin the Business and Claimants financially, trying to drive away customers, trying to drive away employees, refusing to transfer the liquor license and SBA loan, was a breach of the implied covenant of good faith and fair dealing.

### 3. Respondent Committed Fraud.

The elements of fraud are: "(1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages." *Service by Medallion, Inc. v. Clorox Co*. (1996) 44 Cal.App.4th 1807, 1816.

Claimants argue that Respondent represented to Claimants that she intended to sell the Business, with the intent to deceive and induce justifiable reliance by Claimants to pay her

millions of dollars. However, although Respondent's conduct following her receipt of the $1.5 Million downpayment evidenced that she wanted to take back the Business and Premises, Claimants did not meet the burden of establishing that Respondent's intent at the time of the sale was to take Claimants' money, and then make operating the Business so difficult that they would succumb and surrender the Business and Premises to Respondent.

Claimants established fraud with regard to Respondent falsely represented to lenders that she owned the Business to induce them to give her hundreds of thousands of dollars for Business receivables, to deceive and induce their justifiable reliance, with the intent to damage Claimants, should they continue to own the Business. Respondent admitted that she fraudulently obtained the loans and used the proceeds for her personal and business expenses.

4. <u>Respondent Breached the Covenant of Quiet Enjoyment</u>.

Pursuant to Civil Code § 1927, every lease contains an implied covenant of quiet enjoyment. Respondent physically invaded the Business and Premises on September 28, 2023, for which she has been criminally charged. The Arbitrator finds that this was a breach of the covenant of quiet enjoyment.

Civil Code § 3304 provides the measure of damages for breach of the covenant of quiet enjoyment:

"1. The price paid to the grantor; or, if the breach is partial only, such proportion of the price as the value of the property affected by the breach bore at the time of the grant to the value of the whole property;

2. Interest thereon for the time during which the grantee derived no benefit from the property, not exceeding five years;

3. Any expenses properly incurred by the covenantee in defending his possession."

Claimants also argue Penal Code §418 applies, which provides: "[e]very person using or procuring, encouraging or assisting another to use, any force or violence in entering upon or detaining any lands or other possessions of another, except in the cases and in the manner allowed by law, is guilty of a misdemeanor."

Case: 24-05047   Doc# 1   Filed: 11/13/24   Entered: 11/13/24 19:52:09   Page 51 of 59

5. <u>Respondent Committed Conversion and Misappropriation.</u>

The Arbitrator finds that Respondent converted and took specific sums of money from Claimants in her invasion of the Business and Premises. Respondent also converted and stole specific sums by false and fraudulent loans and sales of Business receivables.

6. <u>Violation of Penal Code §496.</u>

Claimants seek treble damages pursuant to Penal Code§496(c), for loans Respondent wrongfully, intentionally, and fraudulently procured without authority, and money stolen during invasion.

Penal Code §496 (section 496(a)) defines the criminal offense of receiving stolen property in relevant part: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained," is subject to incarceration. Section 496(c) sets forth special civil remedies when a violation of section 496(a) has occurred. Section 496(c) states that any person who has been injured by a violation of section 496(a) "may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

Resolving a split of authority, the California Supreme Court held that treble damages and attorney fees are available under section 496(c) where, as here, "property has been obtained in any manner constituting theft." *Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal. 5th 333, 361. The unambiguous relevant language of section 496 covers Respondent's fraudulent diversion of Business receivables through the fraudulent loans she obtained from lenders. Respondent's conduct falls within the ambit of section 496(a): She "receive[d]" "property" (the diverted future receivables) belonging to Claimants, having "obtained" the diverted funds "in [a] manner constituting theft." Respondent also concealed or withheld those funds from Claimant. Respondent did all of this "knowing" the diverted funds were "so ... obtained." Section 496(a).

7. <u>Damages</u>

The Arbitrator finds that Claimants established the following damages.

Case: 24-05047    Doc# 1    Filed: 11/13/24    Entered: 11/13/24 19:52:09    Page 52 of 59

- Loss of value of the Business, Respondent's causing the Business to be shut down, damaging the premises, destroying virtually all of the goods, systems and services that were contractually agreed to be included in the deal for the Business, and which were needed to operate the Business, damaging equipment, and driving away customers: **$2,750,000.00.**

- Respondent's tortious invasion and breach of covenant of quiet enjoyment : **$529,843.17** lost perishables/other goods; plus **$150,000.00** one month lost profits; total **$679,843.17**.

- Loss of goodwill: Not established. No expert testimony, or other evidence of damages due to loss of goodwill, was submitted.

- Emotional distress: Claimants testified to the stress and emotional distress caused by Respondent's actions, including anxiety, fear, insomnia, the need for medication, and the day-after-day threats upon the Business. However, they did not support their testimony with expert or medical reports. The Arbitrator awards a basic amount of $50,000 based upon the evidence presented: **$50,000**.

- Punitive and exemplary damages:  The Arbitrator finds that Claimants have proved, by clear and convincing evidence, that Respondent's conduct was malicious and evidenced ill will, and was for the purpose of injuring Claimants personally and in the Business they had purchased and invested in. Respondent's conduct continued through the arbitration hearing and to date, with Respondent's recent filing of yet another Complaint against Claimants in San Benito Superior Court for the same issues determined in the arbitration. The Arbitrator awards punitive and exemplary damages in a multiple of three times the above actual damages (**$3,479,843.17**), for a total of **$10,289,679.51.**

- Damages for Respondent's theft and conversion by false and fraudulent loans against the Business**: $771,320.50**

- Damages for Respondent's theft and conversion of cash during invasion: **$60,000.00**

- Penal Code §496(c) treble damages of false and fraudulent loans theft and conversion and invasion theft and conversion: **$831,320.50 x 3 = $2,493.961.50**

- Civil Code § 3287(a) and (b) pre-Award interest, at 7% :  Interest at 7% from the October 2, 2023, filing of the demand for arbitration to September 26, 2024, is $298,474.27 and $826.79 each day thereafter, for a total of **$303,435.01.**


    8.    <u>Declaratory and Injunctive Relief</u>

Claimants seek and have established their right to the following non-monetary (e.g., declaratory, protective, injunctive) relief and remedies:

A Declaration that:

(1) The Agreement consists of the Term Sheet, Promissory Note and Lease.

(2) The Agreement has been performed by Claimants, except as prevented and frustrated by Respondent, and is effective, subject to the relief and remedies of the Award.

(3) The Business (JM Supermarkets, Inc. DBA Los Cuates Supermercado Y Taqueria and its assets) is as defined in the Term Sheet, e.g., paragraphs 4, 6.

(4) The Business is owned by Yin Ting and Rufino Vasquez, 50% each. Respondent sold, does not own, and cannot act for or on behalf of, the Business.

(5) Respondent breached the Agreement and her attendant duties.

(6) Respondent breached the covenant of quiet enjoyment and covenant of good faith and fair dealing and her attendant duties.

(7) Respondent breached her tort and statutory duties, including fraud, theft, conversion misappropriation, trespass, and forcible detainer.

(8) Respondent deprived Claimants of the benefit of the bargain of the Agreement.

(9) Respondent failed to cooperate to enable Claimants to assume the SBA loan, preventing and frustrating them from doing so. The SBA loan is from a third party and is secured by the Business, and Claimants are forced to address it, causing them further damage. Accordingly, Claimants are entitled to a $2,000,000.00 offset against any other remaining obligations under the Agreement.

(10) The liquor license for the Business is material to the operation and value of the Business. Respondent is liable for all resulting harm and damages due to Respondent's failure to cooperate to transfer the liquor license for the Business.

(11) Respondent acted intentionally, willfully, oppressively, fraudulently, maliciously.

(12) Respondent's San Benito Superior Court verified complaint was ordered to arbitration. The arbitration, and the Award, encompass, address and resolve all issues, claims and defenses in, relating to and arising from all court and arbitration pleadings,

Case: 24-05047   Doc# 1   Filed: 11/13/24   Entered: 11/13/24 19:52:09   Page 54 of 59

and as could have been raised therein, and as otherwise raised in the arbitration (collectively "Issues").

(13) Respondent's misconduct constitutes, and she is guilty of, unclean hands as to all Issues. Respondent is barred from in any way at any time bringing, pursuing, prevailing on, recovering on and/or relief or remedy, of any manner, at law or equity, as to all Issues.

(14) Title to and ownership of the Premises is, and shall remain in, the Business, subject to liens of record as of the date of the Award.

(15) Respondent shall not directly or indirectly, by herself or in concert with any other person or entity, in any way at any time interfere with the ownership and operation of the Business and Premises and Claimants' rights, or otherwise act contrary to the Award.

(16) All monetary amounts of the Award shall be an offset against any monetary obligations of Claimants under the Agreement.

(17) Respondent has repeatedly failed to comply with, and has violated, orders of the Arbitrator.

Finally, Claimants seek relief from Respondent's wrongful transfer of title to the Premises. On September 12, 2023, by recorded deed, Respondent unilaterally transferred title and ownership of the Premises from herself to her solely owned company MOB Holdings Corporation ("MOB"), which constituted a non-curable default under Respondent's mortgage of the Premises, causing the mortgage lender to declare default and commence foreclosure proceedings. On August 5, 2024, by quitclaim deed recorded on August 14, 2024, Respondent again unilaterally transferred title and ownership of the Premises, this time from MOB to the Business; hence, Respondent put title to and ownership of the Premises in the Business. The deed and transfer are performed and cannot now be avoided.

Respondent insists the Premises are worth $3,400,000.00, not counting liens of record. The amount due to the mortgage holder as of the originally scheduled August 22, 2024, foreclosure is $1,743,184.25, and increases daily since then. The amount due to the lender of one of Respondent's fraudulent loans is $513,735.50 as of the date of judgment (and lien of record), and increases daily since then. Foreclosure is imminent and would deprive Claimants of

possession and operation of the Business – destroying the Business – because foreclosure will terminate the Lease, because Respondent failed to seek and obtain a SNDA (subordination, non-disturbance and attornment agreement) regarding and protecting the Business and the Lease.

It is necessary, reasonable, just and equitable, and related to the Agreement, for title to and ownership of the Premises to be and remain in the Business. Claimants have agreed that the $1,143,080.25 balance after addressing the above amounts ($3,400,000.00 Respondent insisted value, less $1,743,184.25 Respondent-created mortgage lien liability, less $513,735.50 Respondent created judgment lien liability, leaving a balance of $1,143,080.25) shall be a credit and deduction for Respondent only against the monetary damages awarded to Claimants in the Award, and not any manner of affirmative recovery for Respondent. The Arbitrator so orders.

## 9. Attorney Fees and Costs

The Arbitrator finds that Claimants prevailed. The Agreement contains a prevailing party attorney fees provision. *See, e.g.*, Promissory Note ¶B, Term Sheet ¶22, Lease ¶21H. Independent of this contractual mandate for attorney fees and costs, Penal Code §496 mandates attorney fees.

Claimants submitted detailed attorney fees records, supported by the Declaration of Jules Kabat, the partner in charge. The Arbitrator finds that the fees and costs are reasonable. The attorney rates are quite reasonable for rates in the community. The Arbitrator awards Claimants their attorney fees of $705,839.80 and costs of $24,573.10.

## IV. CONCLUSION

Claimants Yin Ting, and Rufino Vasquez have established their claims for breach of contract, breach of covenant of quiet enjoyment, breach of covenant of good faith and fair dealing, conversion, and misappropriation, and are entitled to damages and relief from Respondent Marie Ochoa Barajas.

1.      Claimants Yin Ting, and Rufino Vasquez are awarded $3,479,843.17 against Respondent Maria Ochoa Barajas for actual damages (not including Penal Code 496(c) damages), and punitive and exemplary damages in the amount of $10,289,679.51.

2.      Claimants Yin Ting, and Rufino Vasquez are awarded $831,320.50 against Respondent Maria Ochoa Barajas for theft and fraudulent conversion, trebled to the amount of $2,493.961.50, pursuant to Penal Code §496(c).

3.      Claimants Yin Ting, and Rufino Vasquez Loss are awarded $303,435.01 against Respondent Maria Ochoa Barajas in interest through October 2, 2024.

4.      Respondent Maria Ochoa Barajas shall have a credit and deduction in the amount of $1,143,080.25, only against the monetary damages awarded to Claimants in the Final Award.

5.      Claimants Yin Ting, and Rufino Vasquez have established the entitlement to the following declaration:

a.   The Agreement consists of the Term Sheet, Promissory Note and Lease.

b. The Agreement has been performed by Claimants, except as prevented and frustrated by Respondent, and is effective, subject to the relief and remedies of the Award.

c. The Business (JM Supermarkets, Inc. DBA Los Cuates Supermercado Y Taqueria and its assets) is as defined in the Term Sheet, e.g., paragraphs 4, 6.

d. The Business is owned by Yin Ting and Rufino Vasquez, 50% each. Respondent sold, does not own, and cannot act for or on behalf of, the Business.

e. Respondent breached the Agreement and her attendant duties.

f. Respondent breached the covenant of quiet enjoyment and covenant of good faith and fair dealing and her attendant duties.

g. Respondent breached her tort and statutory duties, including fraud, theft, conversion misappropriation, trespass, and forcible detainer.

h.   Respondent deprived Claimants of the benefit of the bargain of the Agreement.

i.   Respondent failed to cooperate to enable Claimants to assume the SBA loan, preventing and frustrating them from doing so. The SBA loan is from a third party and is secured by the Business, and Claimants are forced to address it, causing them further damage. Accordingly, Claimants are entitled to a $2,000,000.00 offset against any other remaining obligations under the Agreement.

j.  The liquor license for the Business is material to the operation and value of the Business. Respondent is liable for all resulting harm and damages due to Respondent's failure to cooperate to transfer the liquor license for the Business.

k. Respondent acted intentionally, willfully, oppressively, fraudulently, maliciously.

l. Respondent's San Benito Superior Court verified complaint was ordered to arbitration. The arbitration, and the Award, encompass, address and resolve all issues, claims and defenses in, relating to and arising from all court and arbitration pleadings, and as could have been raised therein, and as otherwise raised in the arbitration (collectively "Issues").

m.  Respondent's misconduct constitutes, and she is guilty of, unclean hands as to all Issues. Respondent is barred from in any way at any time bringing, pursuing, prevailing on, recovering on and/or relief or remedy, of any manner, at law or equity, as to all Issues.

n. Title to and ownership of the Premises is, and shall remain in, the Business, subject to liens of record as of the date of the Award, and all tenant obligations under the Lease are nullified.

o.  Respondent shall not directly or indirectly, by herself or in concert with any other person or entity, in any way at any time interfere with the ownership and operation of the Business and Premises and Claimants' rights, or otherwise act contrary to the Award.

p. All monetary amounts of the Award shall be an offset against any monetary obligations of Claimants under the Agreement.

q. Respondent has repeatedly failed to comply with, and has violated, orders of the Arbitrator.

r.  All funds in the Account belong to Claimants.

s.  All funds at the Business' account at Bank of America belong to Claimants.

Claimants are the prevailing party. Claimants Yin Ting, and Rufino Vasquez are awarded their attorney fees of $705,839.80 and costs of $24,573.10, against Respondent Maria Ochoa Barajas.

Case: 24-05047   Doc# 1   Filed: 11/13/24   Entered: 11/13/24 19:52:09   Page 58 of 59

This Award shall bear simple interest at the rate of 10 percent per annum until the earlier of: (i) payment of the Award; or (ii) confirmation of the Award in a court of competent jurisdiction, at which time the Award will become a judgment and bear interest at the applicable judgment rate.

This Final Award resolves all claims between the parties submitted for decision in this proceeding. All claims and defenses not expressly granted are denied. This Award may be confirmed by any state or federal court of appropriate jurisdiction.

Dated: October 2, 2024

Barbara A. Reeves, Esq.
Arbitrator